JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Tracy McGowan

**(b)** County of Residence of First Listed Plaintiff ______
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Kevin Console, Esq., Console Mattiacci Law
1525 Locust Street, 9th Floor
Philadelphia, PA 19102

**DEFENDANTS**

Janssen Scientific Affairs, LLC; Johnson & Johnson Services, Inc.; Johnson & Johnson; Janssen Research & Development, LLC; Janssen Services, LLC; Janssen Global Services, LLC; and Janssen Biotech, Inc.

County of Residence of First Listed Defendant ______
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
42 U.S.C. § 12101, et seq.; 43 P.S. § 951, et seq.

Brief description of cause:
Plaintiff was discriminated & retaliated against based on her disability in violation of federal and state law.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** In excess of $75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 09/17/2026

SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Tracy McGowan | : | CIVIL ACTION |
| v. | : | |
| Janssen Scientific Affairs, LLC, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| 09/17/2026 | [signature] | Plaintiff, Tracy McGowan, M.D. |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 545-7676 | (215) 689-4137 | kevinconsole@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

Place of Accident, Incident, or Transaction: Horsham, PA

***RELATED CASE IF ANY:*** Case Number:________________ Judge:____________________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☒ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:________________

**B. *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):__________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*__________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

**TRACY MCGOWAN**
Lafayette Hill, PA 19444

*Plaintiff,*

v.

**JOHNSON & JOHNSON**
800 Ridgeview Drive
Horsham, PA 19044

and

**JANSSEN SCIENTIFIC AFFAIRS, LLC**
800 Ridgeview Drive
Horsham, PA 19044

and

**JANSSEN RESEARCH & DEVELOPMENT, LLC**
800 Ridgeview Drive
Horsham, PA 19044

and

**JANSSEN SERVICES, LLC**
800 Ridgeview Drive
Horsham, PA 19044

and

**JANSSEN GLOBAL SERVICES, LLC**
800 Ridgeview Drive
Horsham, PA 19044

and

**JANSSEN BIOTECH, INC.**
800 Ridgeview Drive
Horsham, PA 19044

and

CIVIL ACTION NO. ____________________

**JOHNSON & JOHNSON SERVICES, INC.**
800 Ridgeview Drive
Horsham, PA 19044

***Defendants.***

**COMPLAINT AND JURY TRIAL DEMAND**

## I. INTRODUCTION

Plaintiff, Tracy McGowan, brings this action against her former employers, Johnson & Johnson, Janssen Scientific Affairs, LLC, Janssen Research & Development, LLC, Janssen Services, LLC, Janssen Global Services, LLC, Janssen Biotech, Inc., and Johnson & Johnson Services, Inc. (collectively, "Defendants"), for discriminating against Plaintiff based upon her disability and retaliating against Plaintiff for seeking reasonable accommodations for her disability.

Defendants' unlawful conduct includes subjecting Plaintiff to a hostile work environment, paying Plaintiff a significantly reduced bonus, terminating Plaintiff's employment, and failing to select Plaintiff for open positions for which she was qualified and applied, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA") and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

Plaintiff seeks damages, including economic loss, including loss of benefits, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief this Court deems appropriate.

## II. PARTIES

1. Plaintiff, Tracy McGowan, is an individual and a citizen of the Commonwealth of Pennsylvania. Plaintiff resides in Lafayette Hill, PA.

2. At all relevant times, Plaintiff was "disabled" in that she suffered from an impairment, including severe persistent asthma and vocal cord dysfunction, which substantially limited one or more of her major life activities, had a record of impairment and/or was regarded as having such impairment.

3. Defendant Johnson & Johnson is engaged in an industry affecting interstate commerce and regularly does business in Pennsylvania, and maintains offices located at 800 Ridgeview Drive, Horsham, PA 19044.

4. Defendant Janssen Scientific Affairs, LLC is engaged in an industry affecting interstate commerce and regularly does business in Pennsylvania, and maintains offices located at 800 Ridgeview Drive, Horsham, PA 19044.

5. Defendant Janssen Research & Development, LLC is engaged in an industry affecting interstate commerce and regularly does business in Pennsylvania, and maintains offices located at 800 Ridgeview Drive, Horsham, PA 19044.

6. Defendant Janssen Services, LLC is engaged in an industry affecting interstate commerce and regularly does business in Pennsylvania, and maintains offices located at 800 Ridgeview Drive, Horsham, PA 19044.

7. Defendant Janssen Global Services, LLC is engaged in an industry affecting interstate commerce and regularly does business in Pennsylvania, and maintains offices located at 800 Ridgeview Drive, Horsham, PA 19044.

8. Defendant Janssen Biotech, Inc. is engaged in an industry affecting interstate

commerce and regularly does business in Pennsylvania, and maintains offices located at 800 Ridgeview Drive, Horsham, PA 19044.

9. Defendant Johnson & Johnson Services, Inc. is engaged in an industry affecting interstate commerce and regularly does business in Pennsylvania, and maintains offices located at 800 Ridgeview Drive, Horsham, PA 19044.

10. Defendants collectively maintain and operate offices within the Eastern District of Pennsylvania judicial district, including offices located at 800 Ridgeview Drive, Horsham, PA 19044.

11. At all relevant times, Plaintiff was employed by Defendants in connection with their Horsham, Pennsylvania operations.

12. Each of the named Defendants in this matter presents itself and conducts business as the "alter ego" of the other named Defendants.

13. Defendants collectively presented themselves as a single company such that third parties dealt with them as one unit.

14. Defendants share common ownership, personnel policies, procedures and employment practices.

15. Defendants are interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise. Defendants collectively caused the actions complained of herein.

16. At all relevant times, Defendants employed the requisite number of employees within the meaning of the statutes which form the basis of this matter.

17. At all relevant times, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with

Defendants and in furtherance of Defendants' business.

18. At all relevant times, Defendants acted as an employer within the meaning of the statutes which form the basis of this matter.

19. At all relevant times, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

## III. JURISDICTION AND VENUE

20. The causes of action which form the basis of this matter arise under the ADA and the PHRA.

21. This Court has jurisdiction over Count I (ADA) pursuant to 42 U.S.C. § 12117(a) and 28 U.S.C. § 1331.

22. This Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. § 1367.

23. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred within this District.

24. On or about March 24, 2025, Plaintiff filed a complaint of discrimination with the Pennsylvania Human Relations Commission, complaining of the acts of discrimination and retaliation alleged herein. That complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto and incorporated herein as Exhibit "1" is a true and correct copy of Plaintiff's agency complaint (with personal identifying information redacted).

25. On or about June 22, 2026, the EEOC issued to Plaintiff a Notice of Right to Sue pertaining to Plaintiff's agency complaint. Attached hereto as Exhibit "2" is a true and correct copy of that Notice (with personal identifying information redacted).

26. Plaintiff has fully complied with all administrative prerequisites for the

commencement of this action.

## IV. FACTUAL ALLEGATIONS

27. On or about September 12, 2005, Plaintiff began working at Defendants.

28. Plaintiff consistently performed her job duties in a highly competent manner.

29. Plaintiff last held the position of Therapeutic Area Head for Prostate Cancer.

30. Plaintiff last reported to Biljana Naumovic, President of Solid Tumor Oncology.

31. Naumovic reported to Thomas Cavanaugh, Company Group Chairman, North America, Innovative Medicine.

32. Cavanaugh reported to Jennifer Taubert, Executive Vice President, Worldwide Chairman, Innovative Medicine.

33. Taubert reported to Joaquin Duato, Chairman and Chief Executive Officer.

34. Before reporting to Naumovic, Plaintiff reported to Luca Dezzani, Vice President, Solid Tumor, Medical Affairs.

35. In or about January 2024, Plaintiff was diagnosed with severe persistent asthma and suspicion of vocal cord dysfunction.

36. On or about February 14, 2024, Plaintiff submitted to Donna Ahrens, Senior Occupational Health Nurse, Dezzani, and Tyrone Brewer, President, forms completed by her doctor requesting the reasonable accommodation of working from home, until August 1, 2024, due to her disability.

37. On or about February 27, 2024, Ahrens told Plaintiff that Dezzani and Brewer approved her reasonable accommodation request through August 1, 2024.

38. Plaintiff was able to perform her job duties and responsibilities with the reasonable accommodation of working from home.

39. Plaintiff was able to perform the essential job functions of her role with the reasonable accommodation of working from home.

40. On or about March 6, 2024, Plaintiff's diagnosis of vocal cord dysfunction was confirmed.

41. In or about March 2024, Plaintiff began indirectly reporting to Naumovic as her second level supervisor.

42. In or about July 2024, in a mid-year performance review meeting with Dezzani, Plaintiff received positive feedback.

43. Luca stated that Plaintiff was on track for an Exceeds performance review rating for 2024.

44. Plaintiff stated that she had been reevaluated by her specialists and that an update to her reasonable accommodation request would be soon forthcoming.

45. On or about July 31, 2024, Plaintiff submitted to Ahrens forms completed by her doctor requesting to extend her reasonable accommodation of continuing to work from home, due to her disability.

46. On or about August 14, 2024, Ahrens told Plaintiff that she sent her reasonable accommodation request to Dezzani for his approval.

47. On or about September 4, 2024, Ahrens told Plaintiff that, at Naumovic's request, Wendy Pennie, Human Resources Business Partner, wanted to discuss her reasonable accommodation request, and that Ahrens would get back to her after her call with Pennie.

48. On or about October 3, 2024, in a phone call with Ahrens:

a. Ahrens stated that Naumovic had approved Plaintiff's extended reasonable accommodation request, but only through December 1, 2024;

b. Ahrens stated that Naumovic would not approve her request beyond December 1, 2024;

c. Ahrens stated that Naumovic was aware that Plaintiff's next scheduled evaluation by her doctors would take place on January 7 and 8, 2025; and

d. Ahrens stated that this was the first time in her more than ten (10) years in her position at Defendants that she had encountered a manager pushing back on a reasonable accommodation request from an employee's physician, as Naumovic did on Plaintiff's request.

49. On or about November 22, 2024, in an email to Ahrens, Plaintiff stated that she was scheduled to see her ear, nose, and throat doctor and her asthma doctor in early January 2025, and she asked what she needed to do to extend her reasonable accommodation.

50. On or about December 17, 2024, Ahrens told Plaintiff that her extended reasonable accommodation of working remotely was approved through January 2025.

51. Naumovic regularly communicated to employees that she wanted all employees working in the office, in person.

52. In or about late-December 2024 and early-January 2025, Naumovic held a series of in person business meetings that did not have an option for remote attendance and from which Plaintiff was excluded.

53. On or about January 3, 2025, Dezzani resigned and told Plaintiff to be prepared to be disappointed with her end of year review.

54. When Plaintiff asked Dezzani why she would be disappointed, he stated that Naumovic had changed his rating of her.

55. Dezzani stated that he had thoroughly enjoyed the three (3) years he worked with

Plaintiff, that her performance was impressive, and that he respected her leadership abilities.

56. On or about January 3, 2025, Plaintiff began directly reporting to Naumovic.

57. On or about January 10, 2025, in an email to Ahrens, Plaintiff stated that she had her ear, nose, and throat doctor and her asthma doctor appointments earlier that week, and that her doctors would be conferring on their recommendations for her.

58. On or about January 24, 2025, in a meeting with Naumovic, Plaintiff received a Moderate end of year performance review rating.

59. Plaintiff's performance warranted an Exceeds rating.

60. During the January 24, 2025 meeting with Naumovic:

a. Plaintiff rebutted the unjust criticism set forth in the performance review;

b. Naumovic stated that she was not around when Plaintiff set her goals, and that she was not impressed with Plaintiff;

c. Plaintiff stated that she had not been given any indication that her performance was deficient;

d. Plaintiff stated that they were scheduled soon to discuss her goals and her team, and that she wanted to ensure that they were aligned and she was clear on what Naumovic's expectations were for 2025;

e. Naumovic stated that she did not understand why Plaintiff was not in the office;

f. Plaintiff reminded her that, due to her disability, she had the reasonable accommodation of working from home and, in the coming days, she would be submitting her doctors' updated recommendations for her reasonable accommodations request for her disability; and

g. Plaintiff stated that she wanted to discuss those forthcoming recommendations with

Naumovic.

61. On or about January 26, 2025, in an email to Pennie and Kirielle Vena, Leader Human Resources, Medical Affairs Oncology, Plaintiff rebutted her above unjust performance review rating and feedback.

62. On or about January 27, 2025, Plaintiff submitted to Ahrens forms completed by her doctor requesting to extend her reasonable accommodation of working from home, through the end of February 2025, due to her disability, and requesting the reasonable accommodation of working in a private office upon returning to work in the office in March 2025 with the option of continuing to attend meetings via Zoom.

63. On or about January 29, 2025, in an email from Ahrens, she stated that she emailed Naumovic regarding Plaintiff's updated reasonable accommodation request, and requested a meeting with Naumovic to discuss the same.

64. During the last week of January 2025, Naumovic instructed Plaintiff to send her increasingly detailed outlines of her goals for the year, continuing to request additional details on her submissions to Naumovic. Naumovic asked Plaintiff to detail plans to launch a mid-term pipeline product, which was not consistent with previous requests to focus on current competitive needs and near-term launches. Plaintiff's peers were not asked to provide this level of detail.

65. On February 3, 2025, in an email from Ahrens, she stated that she scheduled a meeting for February 5, 2025 to discuss Plaintiff's reasonable accommodation request with Naumovic.

66. On February 4, 2025, in a meeting with Naumovic and Vena, Defendants terminated Plaintiff's employment, effective March 7, 2025.

67. Defendants' stated reason for terminating Plaintiff's employment was position

elimination.

68. On or about February 4, 2025, following the above, in an email from Naumovic to employees, she stated that Defendants "have decided to create a consolidated GU medical organization, by combining the Prostate and Bladder Therapeutic Area (TA) medical roles." She stated that a new position, Head of Genitourinary ("GU") TA, was being created and posted, and that the Head of Lung TA position and the Vice President, Medical Affairs, Solid Tumor position were also open and being recruited for.

69. Plaintiff received no explanation, including the selection criteria, as to why she was terminated and nondisabled employees and employees who had not sought reasonable accommodations for a disability were retained.

70. Plaintiff received no explanation, including the selection criteria, as to why she was terminated instead of being selected for and/or transferred to any of the open positions for which she was qualified.

71. Defendants terminated Plaintiff's employment because of her disability and/or her seeking reasonable accommodations for her disability.

72. Defendants failed to select Plaintiff for or transfer her to any open or soon to be open position for which she was qualified because of her disability and/or her seeking reasonable accommodations for her disability.

73. Before Plaintiff disclosed her disability and sought reasonable accommodations for her disability, she had received no indication that her job was in jeopardy.

74. Plaintiff had no performance or disciplinary issues through her almost twenty (20) years of service at Defendants.

75. At the time of Plaintiff's termination, the following employees, in addition to

Plaintiff, had reported to Dezzani and were reporting to Naumovic:

a. [open position], Head, Genitourinary Oncology, Medical Affairs;

b. [open position], Head, Lung Cancer Medical Affairs;

c. Denise D'Andrea, Head, New Products Medical Affairs;

d. Lorie Ellis, Head, Real World Evidence, Solid Tumor Oncology;

e. John Skrabal, Head, Field Medical Group, Genitourinary Cancer;

f. Geeta Solanki, Head, Field Medical Group, Lung Cancer;

g. Ashwini Dhume, Senior Director, Medical Communications and Scientific Exchange;

h. Lauren Odorisio, Head, Clinical Operations and Program Management, Medical Affairs; and

i. Veronica Brill, Senior Administrative Assistant.

76. On or about February 5, 2025, Plaintiff applied for the posted Therapeutic Area Head, Lung, US Medical Affairs position.

77. Plaintiff was qualified for the Therapeutic Area Head, Lung, US Medical Affairs position.

78. Naumovic was the hiring manager for this position.

79. On or about February 5, 2025, Plaintiff applied for the posted Vice President, Medical Affairs, Solid Tumors position.

80. Plaintiff was qualified for the Vice President, Medical Affairs, Solid Tumors position.

81. Naumovic was the hiring manager for this position.

82. On or about February 5, 2025, following the above, in an email to Naumovic, Vena,

and Pennie, Plaintiff stated that she had applied for the Therapeutic Area Head, Lung, US Medical Affairs position and that she would be applying for the Therapeutic Area Head, Genitourinary (GU) position when it was posted.

83. Plaintiff received no response to her above email.

84. On or about February 14, 2025, Plaintiff applied for the posted Therapeutic Area Head, Genitourinary (GU) position.

85. Plaintiff was qualified for the Therapeutic Area Head, Genitourinary (GU) position.

86. Naumovic was the hiring manager for this position.

87. On or about February 16, 2025, Plaintiff applied for the posted Global Medical Affairs Leader, Director - Gastroenterology position.

88. Plaintiff was qualified for the Global Medical Affairs Leader, Director - Gastroenterology position.

89. On or about February 20, 2025, Plaintiff received a significantly reduced bonus as compared to bonuses she received in prior years.

90. Defendants paid Plaintiff a significantly reduced bonus as compared to bonuses she received in prior years because of her disability and/or her seeking reasonable accommodations for her disability.

91. On or about February 22, 2025, Plaintiff applied for the posted Head Global Medical Affairs Psoriatic Disease position.

92. Plaintiff was qualified for the Head Global Medical Affairs Psoriatic Disease position.

93. On or about February 22, 2025, Plaintiff applied for the posted Head Global Medical Affairs Atopic Dermatitis and Respiratory position.

94. Plaintiff was qualified for the Head Global Medical Affairs Atopic Dermatitis and Respiratory position.

95. On or about February 22, 2025, Plaintiff applied for the posted Medical Director Clinical Research, Oncology Late Development position.

96. Plaintiff was qualified for the Medical Director Clinical Research, Oncology Late Development position.

97. On or about March 7, 2025, in an email from Defendants' Talent Acquisition Team, Defendants failed to select Plaintiff for the Therapeutic Area Head, Genitourinary (GU) position.

98. Defendants' stated reason for failing to select Plaintiff for the Therapeutic Area Head, Genitourinary (GU) position was that Plaintiff's "credentials are aligned with [Defendants'] needs but were not an exact fit for this job."

99. On or about March 14, 2025, in an email from Defendants' Talent Acquisition Team, Defendants failed to select Plaintiff for the Head Global Medical Affairs Psoriatic Disease position.

100. Defendants' stated reason for failing to select Plaintiff for the Head Global Medical Affairs Psoriatic Disease position was that Plaintiff's "credentials are aligned with [Defendants'] needs but were not an exact fit for this job."

101. On or about March 14, 2025, in an email from Defendants' Talent Acquisition Team, Defendants failed to select Plaintiff for the Head Global Medical Affairs Atopic Dermatitis and Respiratory position.

102. Defendants' stated reason for failing to select Plaintiff for the Head Global Medical Affairs Atopic Dermatitis and Respiratory position was that Plaintiff's "credentials are aligned with [Defendants'] needs but were not an exact fit for this job."

103. On or about March 18, 2025, in an email from Defendants' Talent Acquisition Team, Defendants failed to select Plaintiff for the Global Medical Affairs Leader, Director - Gastroenterology position.

104. Defendants' stated reason for failing to select Plaintiff for the Global Medical Affairs Leader, Director - Gastroenterology position was that Plaintiff's "credentials are aligned with [Defendants'] needs but were not an exact fit for this job."

105. Other than the rejection emails above and acknowledgements confirming that Plaintiff's applications were submitted, Plaintiff received no response to her above applications.

106. Plaintiff was not interviewed for any of the above posted positions for which she applied.

107. Defendants failed to select Plaintiff for the Therapeutic Area Head, Lung, US Medical Affairs position for which she was qualified because of her disability and/or her seeking reasonable accommodations for her disability.

108. Defendants failed to select Plaintiff for the Vice President, Medical Affairs, Solid Tumors position for which she was qualified because of her disability and/or her seeking reasonable accommodations for her disability.

109. Defendants failed to select Plaintiff for the Therapeutic Area Head, Genitourinary (GU) position for which she was qualified because of her disability and/or her seeking reasonable accommodations for her disability.

110. Defendants failed to select Plaintiff for the Head Global Medical Affairs Psoriatic Disease position for which she was qualified because of her disability and/or her seeking reasonable accommodations for her disability.

111. Defendants failed to select Plaintiff for the Head Global Medical Affairs Atopic

Dermatitis and Respiratory position for which she was qualified because of her disability and/or her seeking reasonable accommodations for her disability.

112. Defendants failed to select Plaintiff for the Medical Director Clinical Research, Oncology Late Development position for which she was qualified because of her disability and/or her seeking reasonable accommodations for her disability.

113. Defendants failed to select Plaintiff for the Global Medical Affairs Leader, Director - Gastroenterology position for which she was qualified because of her disability and/or her seeking reasonable accommodations for her disability.

114. Defendants failed to select Plaintiff for any position for which she was qualified because of her disability and/or her seeking reasonable accommodations for her disability.

115. The discriminatory and retaliatory conduct of Defendants, as alleged herein, was sufficiently severe and/or pervasive to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

116. The retaliatory actions taken against Plaintiff after she exercised her right to a reasonable accommodation would discouraged a reasonable employee from exercising those rights.

117. Plaintiff was the only employee directly reporting to Naumovic who had requested a reasonable accommodation for a disability.[1]

118. Plaintiff was the only employee directly reporting to Naumovic who had a disability known to Defendants.

[1] References herein to an employee not having a disability and/or not having requested a reasonable accommodation for a disability are to the best of Plaintiff's knowledge.

119. Plaintiff was provided with no opportunity to remain employed with Defendants.

120. Defendants assigned Plaintiff's job duties to nondisabled employees and/or employees who had not sought reasonable accommodations for a disability.

121. Plaintiff was more qualified to perform her job duties than the nondisabled employees who did not request reasonable accommodations for a disability to whom Defendants assigned her job duties.

122. Defendants' disability discriminatory and retaliatory conduct toward Plaintiff has caused her emotional distress.

**COUNT I - ADA**

123. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

124. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

125. As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

126. The conduct of Defendants, as set forth above, was willful, malicious and outrageous under the circumstances and warrants the imposition of punitive damages against Defendants.

127. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless this Court grants the relief requested herein.

128. No previous application has been made for the relief requested herein.

## COUNT II - PHRA

129. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

130. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the PHRA.

131. As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

132. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

133. No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

a. declaring the acts and practices complained of herein to be in violation of the ADA;

b. declaring the acts and practices complained of herein to be in violation of the PHRA;

c. enjoining and permanently restraining the violations alleged herein;

d. entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

e. awarding damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, including loss of short- and long-term disability benefits, past and

future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

f. awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

g. awarding punitive damages to Plaintiff under the ADA;

h. awarding Plaintiff such other damages as are appropriate under the ADA and the PHRA;

i. awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

j. granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

By: */s/ Kevin Console*
KEVIN CONSOLE, ESQ.
HOLLY W. SMITH, ESQ.
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
Phone: (215) 545-7676
Kevinconsole@consolelaw.com
Hollysmith@consolelaw.com

Dated: September 17, 2026

*Attorneys for Plaintiff*